UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 09-335-JBC

STEPHEN R. ALLEN, PLAINTIFF,

V.     MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION, DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment. R. 13, 14. The court will deny the plaintiff's motion (R. 13) and grant the defendant's motion (R. 14).

I.     Background

At issue is whether the ALJ erred in deciding that the plaintiff, Stephen Rexford Allen, was not disabled under sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d). AR 6. Allen applied for a period of disability and disability insurance benefits on April 6, 2007. AR 32. His claim was denied on November 28, 2007 (AR 34-37) and upon reconsideration on February 5, 2008 (AR 42). Allen requested a hearing, which was held on November 7, 2008. AR 516-58. Administrative Law Judge ("ALJ") Frank Letchworth denied Allen's claim on March 17, 2009. *Id.* at 6-14. The Appeals Council declined to review the

1

ALJ's decision (AR. 513-15) and Allen appealed the Commissioner's decision to this court pursuant to 42 U.S.C. § 405(g).

Allen was thirty-five years old at the time of the ALJ's decision (AR 521), and had worked as a custodian for thirteen years prior to his alleged disability onset date of February 16, 2006 (AR 55, 526-27). Allen alleged disability due primarily to physical injuries stemming from a car accident (AR 84) and secondarily due to organic mental disorders (AR 32). Allen challenges the ALJ's findings regarding his mental capabilities.

Using the five-step sequential evaluation process for determining disability, the ALJ first concluded that Allen had performed no substantially gainful activity subsequent to 2007. AR 8-11. At step two, he found that Allen had "severe" degenerative disc disease of the lumbar and cervical spine (without stenosis or nerve compression), chronic low back pain, sequlae of lumbar spine surgery, limited intellectual functioning, anxiety, and depression. *Id.* at 10. At step three, the ALJ found, however, that these impairments, either singly or in combination, did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P. *Id.* at 11. Next, the ALJ found that Allen could perform a range of light exertion, except for work involving any climbing of ladders, ropes or scaffolds or more than occasional climbing of ramps or stairs. *Id.* at 12. He also found that Allen could frequently stoop, crawl, or reach overhead, but should avoid unprotected heights, hazardous equipment, exposure to vibration and pulmonary irritants. *Id.* Finally, he

found that Allen could perform only simple instructions in an object-focused work setting, could have occasional contact with the public, occasional changes in work settings or routines, and could not perform a job in which reading is an essential element. *Id.* At step four, the ALJ determined that Allen was unable to perform past relevant work. *Id.* at 13. Finally, at step five, the ALJ determined that Allen could perform jobs existing in significant numbers in the national economy. *Id.* at 13-14. Accordingly, the ALJ concluded that Allen was not disabled within the meaning of the Social Security Act. AR 6.

## II. Analysis

Allen alleges that the ALJ erred by giving too little weight to the opinions of Mary Allen Genthner, MS, and Dr. Vassilli Arkadiev and by giving too much weight to the opinions of non-examining state agency psychologists.

### A. Ms. Genthner

The ALJ did not err in declining to adopt Ms. Genthner's diagnosis of mental retardation. Ms. Genthner reported a full-scale IQ score of 57 (61 verbal and 59 performance) and diagnosed Allen with anxiety disorder and mild mental retardation. AR 355-56. Allen alleges that because the ALJ did not discuss each IQ score, he disregarded her evaluation. First, an ALJ need not discuss every piece of evidence in the record, and the fact that he did not discuss these observations does not indicate that they were not considered. *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 665 (6th Cir. 2004). Indeed, the ALJ indicated why he

3

declined to adopt her diagnosis of mental retardation. The ALJ noted that Allen helped raise his three children, including one autistic child, obtained a driver's license and drove himself to the hearing, and had held down the same job for approximately thirteen years. *See Turner v. Comm'r of Soc. Sec.*, 2010 U.S. App. LEXIS 11606, at *11 (6th Cir. June 7, 2010) (noting that the plaintiff's work history did not support a finding of mental retardation). Based on these findings, he concurred with the state agency psychologists, who characterized the IQ scores reported by Ms. Genthner as "suspect in view of [Allen's] work [history] and past levels of adaptive function." AR 376.

In addition, the ALJ's finding that Allen is not mentally retarded was supported by substantial evidence. The Listing of Impairments requires that a claimant establish *both* that he currently has an IQ of 60 through 70 *and* that he exhibited subaverage mental functioning and deficits during his developmental period, defined as before the age of twenty-two. *See Turner*, 2010 U.S. App. LEXIS 11606, at *9. Here, the ALJ noted that Ms. Genthner "made no reference to [Allen's] adaptive functioning, especially during the developmental period." AR 11. Nor has Allen identified any evidence showing that his adaptive functioning was significantly impaired before the age of twenty-two. *See Daniels v. Comm'r of Soc. Sec.*, No. 02-3224, 2003 U.S. App. LEXIS 15633, at *15 (6th Cir. July 30, 2003) (noting that the claimant is required to show that his mental deficiency initially manifested before age twenty-two pursuant to listing § 12.05). The ALJ

therefore did not err in concurring with the state examiner's diagnosis of borderline intellectual functioning and in rejecting a diagnosis of mental retardation.

Moreover, although Ms. Genthner diagnosed Allen as mildly mentally retarded, she also concluded that: (1) his attention/concentration skills are "limited but not precluded"; (2) he has an adequate capacity to make simple work-related decisions; (3) his capacity to tolerate stress and pressure associated with day-to-day work is "limited but not precluded"; (4) simple changes in routine are not likely to be overwhelming to him; and (5) he has a fair ability to relate to employers and co-workers and to work with others without being distracted or overwhelmed. AR 357. This is reflected in the ALJ's conclusions that Allen can "perform only simple instructions in an object-focused work setting, can have occasional contact with the public, and occasional changes in work settings or routines." AR 12. Thus despite the low IQ scores she identified, Ms. Genthner's actual conclusions regarding Allen's capabilities do not indicate mental limitations beyond those adopted by the ALJ.

### B. Dr. Arkadiev

The ALJ also did not err in discounting Dr. Arkadiev's assessment of Allen's mental capabilities and work limitations. Allen alleges that the ALJ did not give sufficient weight to the limitations identified by Dr. Arkadiev, including that Allen had no ability to relate to co-workers, to deal with the public, to deal with stress, or to relate predictably in social situations. R. 13 at 3; AR 448-49. A treating

5

physician's opinion may be discounted if it is unsupported by objective medical evidence or inconsistent with the record as a whole.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390-91 (6th Cir. 2004).  The ALJ declined to give significant weight to Dr. Arkadiev's assessment of Allen's mental abilities because Dr. Arkadiev did not provide adequate clinical support, because other personnel questioned at Dr. Arkadiev's facility had questioned Allen's reliability, and because records from Allen's primary care physician undermined Dr. Arkadiev's assessment.

### 1. Medical Evidence

Dr. Arkadiev's assessment of Allen's work-related abilities stated that Allen was severely limited in every area, with the exception of having a "fair" or "limited, but satisfactory" ability to understand, remember, and carry out simple job instructions.  AR 447-49.  This assessment is belied by Dr. Arkadiev's own moderate GAF score of 50-55, indicating only moderate difficulty with social and occupational functioning.  AR 481.  Dr. Arkadiev also wrote that Allen presented with hallucinations, paranoia and depressive symptoms, but this assessment appears to have been based largely on Allen's self-reports.  *Id.*  Dr. Arkadiev stated that Allen had had psychiatric problems since the age of thirteen (AR 448), yet Allen indicated on his SSA form 3368 that he had never been seen by a doctor/hospital/clinic or anyone else for emotional or mental problems limiting his ability to work (AR 86).  *See Warner,* 375 F.3d at 391 (explaining that the magistrate did not err in disregarding the doctor's conclusions regarding the

6

claimant's physical limitations because they were based on the claimant's own assessment of his limitations, not the doctor's own medical conclusions). Moreover, there is no indication that Dr. Arkadiev treated Allen for hallucinations or any other psychotic symptoms, and Dr. Arkadiev's treatment notes do not indicate that Allen suffered from hallucinations. Dr. Arkadiev's assessment thus also appears inconsistent with his own treating notes. Moreover, as discussed below, Dr. Arkadiev's dire assessment of Allen's capabilities was not consistent with the record as a whole.

### 2. Linda Redmon, M.Ed., PE

The ALJ also properly considered records from Linda Redmon, M.Ed., PE, in discounting Dr. Arkadiev's assessment. Redmon repeatedly noted Allen's questionable reliability as well as his perceptual awareness, clear understanding, and lack of psychotic symptoms. AR 451, 456, 459, 467, 469, 474, 485, 512. Because Redmon's notes are not consistent with Dr. Arkadiev's diagnosis of psychotic symptoms and severe mental limitations, they further support the ALJ's decision not to give significant weight to Dr. Arkadiev's opinion. *See* Social Security Ruling 06-03p (noting that information from other sources may provide insight into the severity of an impairment and how it affects the individual's ability to function).

### 3. Dr. Hays

7

The medical records from Allen's primary care physician, Dr. Talmadge Hays, do not reflect the psychological abnormalities discussed in Dr. Arkadiev's assessment. *Compare* AR 198-201, 281-91, 348-49, 444-45 *with* AR 446-50. Indeed, Dr. Hays's treatment notes indicated that Allen felt that his anxiety medication was helping. AR 281. This provides further support for the ALJ's decision to discount Dr. Arkadiev's assessment.

### C. State agency psychologists

The ALJ also did not err in the weight he assigned to the opinions of state agency psychologists Jane Brake, Ph.D., and Ilze Sillers, Ph.D. Allen objects to the weight afforded these opinions because the non-examining sources did not have access to records submitted by Dr. Arkadiev. R. 13 at 2. Here, as required, the ALJ indicated that he considered this later evidence before giving greater weight to the opinions of Dr. Brake and Dr. Sillers. *See Blakely*, 581 F.3d at 409. The ALJ therefore did not err in weighing the opinions of Drs. Brake and Sillers.

### III Conclusion.

The ALJ's decision was supported by substantial evidence. Here, Allen has not identified any evidence showing the onset of mental retardation before the age of twenty-two, as is required to meet the listing for mental retardation. The ALJ also gave adequate reasons for discounting elements of Ms. Genthner and Dr. Arkadiev's opinions, and his decision was consistent with the record as a whole.

Accordingly,

8

**IT IS ORDERED** that Allen's motion for summary judgment (R 13) is **DENIED** and the Commissioner's motion for summary judgment (R. 14) is **GRANTED**.

A judgment in this matter will issue separately.

Signed on  August 31, 2010

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY